UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAQUSHA NACOLE JONES, individually and as guardian of minor children, D.K., A.K., S.K., A.K., and S.K., <br><br>Plaintiffs, <br><br>v. <br><br>CITY OF SACRAMENTO, OFFICER JOHN CUMBERLAND (#1040), OFFICER JUSTIN JOHNSON (#0786), OFFICER DEVAN PINGREE (#1049), OFFICER MICHAEL PINOLA (#0279), and OFFICER MARK SMALLING (#1041), <br><br>Defendants. | No. 2:20-cv-00900-DJC-KJN <br><br>ORDER APPROVING MINORS' COMPROMISE |

Plaintiff Taqusha Nacole Jones brings a § 1983 lawsuit against the City of Sacramento and several individual officers (together, "Defendants"), based on an alleged unreasonable search and seizure of Plaintiff and her Minor Children (together, "Plaintiffs") while they were at home and while the police were seeking a person on parole who did not reside at the home.  Plaintiff, on behalf of herself and her children,

1

have settled their claims against Defendants and now seek approval of that settlement, called a "Minors' Compromise" (ECF No. 36). Previously, the Court denied without prejudice Plaintiff's proposed Minors' Compromise, asking Plaintiff to file a supplemental brief and affidavit to answer some of the Court's concerns. (*See* ECF No. 37.) Plaintiff has filed a Supplemental Brief to the Minors' Compromise (ECF No. 38), which includes the Affidavit of Taqusha Nacole Jones (ECF No. 38-1). For the reasons set forth below, the Court grants Plaintiff's petition for approval of the Minors' Compromise subject to the conditions provided in the Supplemental Brief and Plaintiff Taqusha Jones's Affidavit. (*See* ECF Nos. 36, 38, 38-1.)

## BACKGROUND

This lawsuit and accompanying Minors' Compromise stem from an encounter on May 6, 2019 between several police officers employed by the City of Sacramento and Plaintiff, her Minor Children, and two friends who are senior citizens that also live and reside at 817 Evans Street, Sacramento, CA. (*See* First Am. Compl. (ECF No. 9) ¶¶ 1, 13–14 ("First Amended Complaint" or "FAC").) At or around 5:00 AM on May 6, 2019, Plaintiff and her Minor Children woke up to the police banging on their door. (*See id.* ¶ 15.) In a rush, Plaintiff placed a blanket around her body to cover her and then went to the door. (*See id.* ¶ 16.) Once Plaintiff got to the door, the police demanded that Plaintiff let them into the home, which Plaintiff refused without a warrant. (*See id.* ¶ 17.) One of the police officers then entered the home by forcing their hand through an open window to turn the handle of the door. (*See id.* ¶ 18.)

Once the police were inside Plaintiff's home, the police began searching the home for a person named "James Kenny" who did not live and had never lived at 817 Evans Street, Sacramento, CA. (*See* FAC ¶¶ 13, 21, 23, 26.) Plaintiff and some of the Minor Children told the police that James Kenny did not and had never lived at their home. (*See id.* ¶ 26.)

"After [being informed that James Kenney did not reside at the home], without provocation, one of the Defendant OFFICERS grabbed [Plaintiff], threw her against

her clothes dryer, and handcuffed her. As he did this, the blanket [Plaintiff] was holding around her fell to the ground and left her partially nude." (FAC ¶ 27.) The police then forced Plaintiff to sit on the couch while in handcuffs. (*See id.* ¶ 28.) Plaintiff and her Minor Children, who witnessed all of this, "felt as though she was not free to leave the room or the house and were concerned for her physical safety." (*Id.*)

The police then explained to Plaintiff that they did have a warrant, at which point they made Plaintiff walk outside to the police car to view the computer screen with the alleged warrant. (*See* FAC ¶¶29–30.) When Plaintiff saw the screen, however, the screen only showed James Kenney's name on it and provided no documentation. (*See id.* ¶ 30.) The police left shortly after this. (*See id.* ¶ 31.)

As a result of what happened on May 6, 2019, Plaintiff and her Minor Children "were left traumatized by the illegal entrance into their home and fearful that their home was no longer a safe place." (FAC ¶ 32.) Plaintiff first filed the Complaint on May 3, 2020. (*See* ECF No. 1.) Plaintiff then filed the First Amended Complaint on June 9, 2020. (*See* ECF No. 9.) The case did not pick up again until the trial was scheduled for January 8, 2024. (*See* ECF Nos. 28–29.) After the Final Pretrial Conference and before documents required by the Court's Trial Confirmation Order were due, Plaintiff and Defendants attended settlement conferences (*see* ECF Nos. 34–35) that culminated in the Stipulation for Approval of the Minors' Compromise and Proposed Order that Plaintiff's counsel filed on January 10, 2024. (*See* Stipulation for Approval of Minor's Compromise for Minor Plaintiffs D.K., A.K., S.K., and A.K. (ECF No. 36) ("Minor's Compromise"); Proposed Order Granting Approval of Minor's Compromise for Minor Plaintiff J.K. (ECF No. 36-1) ("Proposed Order").)

The Court denied without prejudice the proposed Minors' Compromise, instructing Plaintiff to "file: (1) supplemental briefing addressing the issues outlined [in the Order] and (2) an affidavit or declaration sworn under penalty of perjury stating how the money [Plaintiff] will be paid will be used and whether that money will be used to benefit the Minor Children in any way." (ECF No. 37 at 9.) In response,

Plaintiffs filed their Supplemental Brief and supporting affidavit. (*See* Pls.' Suppl. Br. to the Minors Compromise (ECF No. 38) ("Supplemental Brief" or "Suppl. Br."); Affidavit of Taqusha Nacole Jones (ECF No. 38-1) ("Jones Affidavit" or "Jones Aff.").) The matter is now fully briefed.

## DISCUSSION

### I. Legal Standard

No claim by or against a minor or incompetent person may be settled or compromised absent an order by the Court approving the settlement or compromise. E.D. Cal. R. 202(b) (Mar. 1, 2022). The Local Rules require that the motion for approval of a proposed minor's compromise disclose, among other things: (1) the age and sex of the minor, (2) the nature of the causes of action to be settled or compromised, (3) the facts and circumstances out of which the causes of action arose, including the time, place and persons involved, (4) the manner in which the compromise amount or other consideration was determined, including such additional information as may be required to enable the Court to determine the fairness of the settlement or compromise amount, and (5) if a personal injury claim, the nature and extent of the injury with sufficient particularity to inform the Court whether the injury is temporary or permanent. *See* E.D. Cal. R. 202(b)(2).

Furthermore, the Ninth Circuit held in *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) that Federal Rule of Civil Procedure 17(c) imposes a "special duty" on district courts approving a minor's compromise. "[T]his special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" *Id.* (citations omitted). However, this "special duty" has a limited scope of review, only asking "whether the net recovery of each minor plaintiff is fair and reasonable, without regard to the amount received by adult co-plaintiffs and what they have agreed to pay plaintiff's counsel." *Id.* at 1182. "If the net recovery of each minor plaintiff under the proposed settlement is fair and reasonable, the district court should approve the settlement as presented . . . ." *Id.* In making this

determination, "courts typically consider such information as the relative worth of the settlement amount, the circumstances of the settlement, counsel's explanation of their views and experiences in litigating these types of actions, and other similar compromises that have been approved by courts." *Rivett v. United States*, No. 2:21-CV-00717-DAD-AC, 2023 WL 4238909, at *2 (E.D. Cal. June 28, 2023) (collecting cases where the procedural posture was considered, the fact that the settlement occurred at a court-supervised settlement conference was considered, and other compromises were considered).

## II.    Analysis

Plaintiff and the Minor Children together bring 10 state and federal law claims against Defendants based on federal question jurisdiction. Although the Ninth Circuit expressly limited its holding to "cases involving the settlement of a minor's federal claims[,]" *Robidoux*, 638 F.3d at 1179 n.2, where, as here, a court is exercising supplemental jurisdiction over state law claims, courts will apply the *Robidoux* standard to all of the claims, *see, e.g.*, *A.G.A. v. Cnty. of Riverside*, No. EDCV1900077VAPSPx, 2019 WL 2871160, at *3 (C.D. Cal. Apr. 26, 2019) (collecting cases). *Accord Cantu v. Kings Cnty.*, No. 1:20-cv-00538-JLT-SAB, 2023 WL 8806569, at *3 (E.D. Cal. Dec. 20, 2023) (quoting *Calderon v. United States*, No. 1:17-cv-00040-BAM, 2020 WL 3293066, at *3 (E.D. Cal. June 18, 2020)), *R. & R. adopted*, 2024 WL 169153 (E.D. Cal. Jan. 16, 2024).

Despite previously not being able to approve the Minors' Compromise or Proposed Order, the Court now concludes, in light of Plaintiffs' Supplemental Brief and the Jones Affidavit, that the Minors' Compromise is "fair and reasonable, in light of the facts of the case, [each] minor's specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1182. Previously, Plaintiffs failed to provide any comparison cases. Now, Plaintiffs provide several cases where juries awarded various amounts to the successful plaintiffs. (*See* Suppl. Br. at 6–7.) For instance, in *Loggervale v. Holland*, --- F. Supp. 3d ----, No. C 20-04679 WHA, 2023 WL 3958893, at *2 (N.D. Cal. June 12,

2023), the plaintiffs, including the two teenagers, were awarded $2.75 million each. However, in another case, the defendant police officers were found to not have used excessive force where the police officers fired a bean bag round at the decedent and other officers shot their firearms too, leading to the death of the decedent.  (*See* First Am. Compl. for Damages for Survival Claims and Wrongful Death (ECF No. 37), *Booke v. County of Fresno*, No. 1:13-cv-00586-AWI-SAB (E.D. Cal. Jan. 7, 2014); Verdict Form – First Phase (ECF No. 231), No. 1:13-cv-00586-AWI-SAB (E.D. Cal. Feb. 25, 2016).)  Given the potential for a jury to find in favor of Defendants as indicated in these cases, the Court cannot say that the settlement amount is unreasonable.

Moreover, and specifically regarding the Minor Children, each shall receive at least $5,000, as the Jones Affidavit makes clear that Plaintiff "intend[s] to put $20,000 into a separate account held in trust for the minor children, designating $5,000 for each when they reach majority age." (Jones Aff. ¶ 3.)  Considering the fact that there are cases approving compromises or awarding damages in the low four-digit range where there is a wrongful death following medical malpractice, *see Cantu*, 2023 WL 8806569, at *8 (collecting cases), and where the minors suffered no physical injuries and had no specialized medical needs, *see Beck v. Camp Pendleton & Quantico Housing, LLC*, No. 20-CV-579-LAB-WVG, 2022 WL 18460770, at *2 (S.D. Cal. Nov. 14, 2022) (collecting cases), *R. & R. adopted*, 2023 WL 411351 (S.D. Cal. Jan. 25, 2023), the Court concludes that $5,000 for each of the Minor Children involved in this case is "fair and reasonable, in light of the facts of the case, [each] minor's specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1182.

Additionally, the Court was able to find one case with more extreme facts where the minor only received a little more than $7,000.  *See Demoura v. Ford*, No. 1:09-cv-01344-LJO-SKO, 2012 WL 4815523 (E.D. Cal. Oct. 9, 2012), *R. & R. adopted*, 2012 WL 4978785 (E.D. Cal. Oct. 17, 2012).  In *Demoura*, the plaintiffs settled with the City of Oakdale and County of Stanislaus following an allegedly unlawful search executed at the plaintiffs' home.  *See id.* at *1–2.  Plaintiffs were allegedly detained

"with the use of handcuffs, and a threat of lethal force, and force involving the pressing of the muzzle of their automatic firearms against [the adult plaintiff's] person, and pointing their automatic firearms at Plaintiffs." *Id*. at *2 (quoting the operative complaint). The minor involved, then only two years and eight months old, was present when the residence was searched and "suffered physical and psychological trauma" but did not allege any specific injury. *See id*. The minor also had little to no recollection of the actual events. *See id*. at *3. Ultimately, the court approved the compromise that awarded the minor $7,136.64. *See id*. Here, by comparison, the Minor Children similarly do not allege any specific injuries but were older than the plaintiff in *Demoura*, and so, likely remember more of the events, thus adding to the potential trauma. However, the First Amended Complaint does not mention that the Minor Children or Plaintiff had firearms drawn on them, thus reducing the potential trauma. Thus, an award of $5,000 for each of the Minor Children seems "fair and reasonable, in light of the facts of the case, [each] minor's specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1182.

Finally, from the Court's own research, awards in cases where there was a mistaken search or seizure because the wrong person or home was seized typically involve more extreme facts, and even those cases average around $10,000. For instance, one case involved a search of a home without probable cause that settled for $15,000 where the minor suffered no physical harm, was not detained or exposed to any harsh, demeaning, or derogatory language, but did faint and urinate herself because of the incident that left the minor "extremely traumatized." *See Evanson v. Cnty. of Los Angeles*, No. 2:19-cv-05393-AB (MAA), 2021 WL 9696561, at *1, 3 (C.D. Cal. Oct. 25, 2021). The plaintiffs in that case cited five similar cases where the "compensatory damages awards ranged from $0 to $12,500." *Id*. at *3 (collecting cases). In two cases, the plaintiffs received $12,5000 each after being detained in handcuffs for two hours during the search of the home. *See id*. (citing *Muehler v. Mena*, 544 U.S. 93, 97 (2005); *Nelson v. District of Columbia*, 953 F. Supp. 2d 128,

129–30 (D.D.C. 2013)). In another, the plaintiff was awarded $7,500 by a jury after her home was searched without probable cause and she was arrested for drugs that tests later revealed were not drugs. *See id.* (citing *Warlick v. Cross*, 969 F.2d 303, 304–05 (7th Cir. 1992)). In the last case, the three plaintiffs received $15,000 in total punitive damages after being strip searched at a night club. *See id.* (citing *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1001 (5th Cir. 2003)). All of those cases involved more extreme facts, and some of those plaintiffs only received $5,000 or $7,500. Considering that each of the Minor Children will receive $5,000, the Court concludes that the settlement amount is "fair and reasonable, in light of the facts of the case, [each] minor's specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1182.

As for compliance with the Eastern District's Local Rules, the Supplemental Brief provides all of the required information that was previously missing. The Supplemental Brief makes clear that Plaintiffs' Counsel came to meet Plaintiffs after referral from the Sacramento Black Lives Matter group, which led to a contingency agreement. (*See* Suppl. Br. at 5–6.) Counsel has also agreed to reduce their fees to 30% and to waive reimbursement of costs. (*See id.* at 6.) This Minors' Compromise also only pertains to D.K., a male, and A.K., S.K., and A.K., all of whom are females. (*See id.* at 1.) Two other children that were involved in the matter, J.K. and S.K., have reached the age of majority. (*See id.*) Thus, the Court now has all of the information required by Local Rule 202(c).

Finally, the Jones Affidavit satisfies Local Rule 202(e), which requires money or property recovered on behalf of a minor to be "(1) disbursed to the representative pursuant to state law upon a showing that the representative is duly qualified under state law, (2) disbursed otherwise pursuant to state law, or (3) disbursed pursuant to such other order as the Court deems proper for the protection of the minor . . . ." California law requires a structured settlement annuity or some similar locked-in, fixed-term investment vehicle for settlements for minors exceeding $5,000, and permits the parents or other guardian to hold the money for the minor in trust until the

minor reaches the age of majority so long as the parent or guardian swears by oath "that the total estate of the minor, including the money or other property to be paid or delivered to the parent, does not exceed five thousand ($5,000) in value." Cal. Prob. Code § 3401(c)(2), *see* Cal. Prob. Code § 3611; *see, e.g.*, *Beck*, 2022 WL 18460770, at *2 (permitting procedure whereby parent would hold minor's award in trust and collecting cases); *Williams v. Cnty. of Monterey*, No. 19-CV-01811-BLF, 2020 WL 7342737, at *1–2 (N.D. Cal. Dec. 14, 2020) (noting that "district courts within the Ninth Circuit commonly order that such funds be deposited into a blocked account for the minor's benefit." (collecting cases)); *see also* Cal. Prob. Code § 3400 (excluding from the definition and computation of the "total estate of the minor" any "'Custodial property' held pursuant to the California Uniform Transfers to Minor Act" and "[a]ny money or property subject to court order" under Cal. Prob. Code § 3602(c)); Cal. Prob. Code § 3412 (providing procedures for terminating guardianship and disposing of money when the sole asset of the guardianship estate is money). Plaintiff avers under penalty of perjury that she will place $5,000 each in a separate account held in trust for the Minor Children. (*See* Jones Aff. ¶ 3.) This satisfies the minimum requirements of California Probate Code. *See Beck*, 2022 WL 18460770, at *2.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's Stipulation for Approval of the Minors' Compromise (ECF No. 36). Plaintiffs are instructed to notify the Court when the Settlement Amount has been paid and the separate account held in trust for the Minor Children have been established.

IT IS SO ORDERED.

Dated: **March 11, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC3 – Jones.20cv900.minors.compromise